FILED
2021 Dec-29  AM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLORIA HOLLADAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | _____ |
| | ) | |
| **GESTAMP ALABAMA, LLC,** | ) | **PLAINTIFF DEMANDS TRIAL** |
| | ) | **BY STRUCK JURY** |
| **Defendant.** | ) | |

---

## COMPLAINT

---

## JURISDICTION & VENUE

1.     This is a complaint for legal and equitable relief to redress violations of Plaintiff's rights secured by:

   a.    The Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 - 634;

   b.    Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code 1975, §25-1-20;

   c.    Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, including 42 U.S.C. § 1981a, and the Lily Ledbetter Fair Pay Act of 2009;

   d.    The Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1);

1

e.     The general law of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

a.     28 U.S.C. §§ 1331, 1343(a)(3);

b.     The ADEA, 29 U.S.C. §626(c)(l);

c.     Title VII, 42 U.S.C. §2000e-5(f)(3);

d.     29 U.S.C. §§ 216(b), 217.

3.     Plaintiff's claims arising under the laws of the State of Alabama are properly before this Court pursuant to 28 U.S.C. §1367, supplemental jurisdiction.

4.     Venue lies within the Northern District of Alabama. 28 U.S.C. §1391; 42 U.S.C. §2000e-5(f)(3).

## PARTIES

5.     Plaintiff, Gloria Holladay (hereinafter "Holladay") is a female over the age of nineteen. Holladay is an Alabama resident and was employed by Gestamp Alabama, LLC.

6.     Defendant Gestamp Alabama, LLC ("Gestamp") is a foreign corporation incorporated in Delaware with its principal place of business in Troy, Michigan. Gestamp operates a facility located in McCalla, Alabama.

7.     Gestamp designs, develops and manufactures automotive parts and components.

8.  At all times relevant to this Complaint, Gestamp was doing business within the Northern District of Alabama.

9.  Gestamp employs at least fifteen (15) persons within the meaning of Title VII, 42 U.S.C. § 2000e(b) and at least twenty (20) persons within the meaning of the ADEA, 29 U.S.C. §630(b).

## ADMINISTRATIVE PROCEDURES

10.  On February 24, 2021, within 180 days of learning of the acts of discrimination of which she complains, Holladay filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), alleging sex and age discrimination and retaliation.  **(Exhibit A.)**

11.  The EEOC issued the Notice of Right to Sue to Holladay on September 29, 2021, which Holladay received on October 16, 2021. **(Exhibit B.)**

12.  Holladay has met all conditions precedent to bringing this suit.

## STATEMENT OF FACTS

13.  Holladay is a 54-year-old female.

14.  Holladay began her employment with Gestamp in October 2003, as a Production Associate in Material Handling.

15.  Gestamp promoted Holladay to the position of Materials Analyst in March of 2015.

16.  Gestamp assigned Holladay job duties of Materials Analyst, which

included monitoring the production floor, managing the parts inventory, and inputting data into Gestamp's Enterprise Resource Planning software known as SAP.

17.     Throughout the tenure of her employment, Gestamp reviewed Holladay's work performance and rated Holladay's performance as satisfactory and awarded her annual merit-based pay increases. Holladay's last pay increase raised her pay from $55,000 to $56,500.

18.     Holladay's pay was significantly less than the other two Materials Analysts, Jessica Tarwater and Damian Poche.

19.     Jessica Tarwater (hereinafter "Tarwater"), a female in her thirties, was paid an annual salary of $60,000 to $65,000, and Damian Poche (hereinafter "Poche"), a male in his thirties, was paid an annual salary of $60,000 to $65,000.

20.     In approximately 2018, Gestamp hired Craig Lane (hereinafter "Lane") as Plant Manager at the McCalla facility.

21.     In late 2019, Materials Manager Dave Murrell (hereinafter "Murrell"), Holladay's long-time supervisor, resigned. Gestamp hired Bob Steinwachs (hereinafter "Steinwachs") to replace Murrell as Materials Manager.

22.     Gestamp assigned Holladay to the 6:00 a.m. to 3:00 p.m. shift. Holladay would start her shift on the production floor, assessing production of existing inventory in order to prevent or resolve any inventory issues prior to shipment from

Gestamp's suppliers, which routinely had trucks leaving early.

23.     Lane and Steinwachs did not arrive at work until 7:00 a.m. or later.

24.     Gestamp utilized an SAP software program that managed Gestamp's parts inventory. The program contained a persistent and well-documented glitch that caused automotive parts to drop from Gestamp's inventory lists. Lane and Steinwachs were aware of this issue but failed to take any measures to correct the issue.

25.     On February 21, 2020, a part ran out of stock due to the SAP software glitch. As a result, Gestamp shut down its main floor assembly line and sent first shift associates home early. Gestamp expedited shipment of parts from a sister plant in Michigan in order for the main floor to be operable for the second shift.

26.     Despite knowing that the shortage was due to the problems with the SAP software, Lane and Steinwachs blamed Holladay for the shortage in stock.

27.     Gestamp has a four step progressive disciplinary policy.

28.     Gestamp failed to follow its progressive discipline policy and issued Holladay a Written Warning for the stock shortage.

29.     Holladay refused to sign the Written Warning and accept responsibility for the stock shortage as it was caused by the SAP software glitch of which Gestamp was well-aware in the months leading up to the shortage of February 21, 2020.

30.     Steinwachs resigned as Materials Manager in March 2020 and was

replaced by Virgil Cance (hereinafter "Cance"), a male in his thirties.

31.    During the COVID shutdown, Gestamp had a reduction in force and lost its only Cycle-Counter employee. Holladay cycle-counted for an entire week, counting all purchased parts in addition to performing her usual duties of ordering additional parts.

32.    In August 2020, Gestamp began hiring contract Materials Analysts.

33.    On August 14, 2020, Gestamp's Human Resources Manager Sonya Green (hereinafter "Green") informed Holladay via email that she was receiving her annual merit-based pay increase, raising her salary from $55,000 to $56,500.

34.    After learning of her merit-based pay increase, Holladay sent an email to her supervisor, Virgil Cance and asked why she was not being paid equally with the other Materials Analysts.

35.    Holladay also notified Cance that the new contract Materials Analysts were being hired at a higher rate of pay, and that Holladay was the lowest paid Materials Analyst.

36.    After Holladay complained of pay disparity, Cance started assigning additional job duties to Holladay that were outside her job description and making comments about Holladay's longevity with the company. Cance did not assign additional job duties to the younger and male Materials Analysts.

37.    Two weeks after Holladay complained of discrimination, Cance

assigned Holladay the task of training the new contract Materials Analysts on supplier accounts

38.     Holladay began to train the first contract Materials Analyst, a female in her thirties, who quit after two weeks of training.

39.     Gestamp then hired another contract Materials Analyst, Dustin Cornell (hereinafter "Cornell"), a male in his thirties. Cance instructed Holladay to train Cornell.  Gestamp was grooming Cornell to replace Holladay, and Cance was making Holladay train him.

40.     Cance instructed Holladay to immediately turn over the supplier accounts for BOCAR and Martinrea to Cornell. Previously these were accounts Holladay had managed. Cornell began working the BOCAR and Martinrea accounts without adequate training, refusing to accept any assistance from Holladay despite her history with the accounts.

41.     On September 2, 2020, supply orders to Martinrea had not been updated, and Gestamp did not have sufficient Martinrea parts on hand to fulfill its production schedule for its customer, Mercedez-Benz (hereinafter "MBUSI"). Gestamp production notified Cance that it was going to run out of parts and shut down MBUSI if additional parts were not delivered. Cance contacted Martinrea that evening and traveled to Martinrea's facility to obtain the additional parts overnight.

42.     The Martinrea supply failure was caused by Cornell. Gestamp did not

discipline Cornell.

43.    Gestamp terminated Holladay on September 3, 2020.

44.    Gestamp replaced Holladay with Cornell immediately after it terminated Holladay. Cornell is a male in his thirties and has considerably less experience than Holladay.

45.    Gestamp paid Cornell a higher rate of pay when he was hired than it had paid Holladay after 17 years of service.

## COUNT ONE
### AGE DISCRIMINATION UNDER THE ADEA AND AADEA DISPARATE TREATMENT AND TERMINATION

46.    Holladay is 54 years old and a member of a protected class.

47.    Gestamp is an employer with over twenty (20) employees.

48.    Holladay was employed with Gestamp for over seventeen (17) years and most recently was promoted to Materials Analyst.

49.    Holladay was paid less than similarly situated younger Materials Analysts, specifically Tarwater, Poche, and Cornell.

50.    Gestamp hired younger employees in their twenties and thirties as Materials Analysts, and paid these younger Materials Analysts more money than Holladay performing the same job duties.

51.    In 2020, Gestamp also terminated the employment of Jay Johnson and Kelvin Parker, both of whom were over the age of forty (40).

52.     Cance, Holladay's young supervisor, made age-biased comments to Holladay about how long she had been working for Gestamp.

53.     Gestamp had a progressive discipline policy but ignored that policy when it disciplined Hollady, failing to utilize a performance improvement plan or progressive discipline to asddress her alleged performance deficiencies.

54.     Gestamp disciplined Holladay for problems associated with the well-documented glitch in the SAP software system that was beyond her control. Younger Materials Analysts, such as Tarwater, Poche and Cornell, were not similarly disciplined.

55.     Holladay complained about her inequitable pay and terms of employment. Her complaints were ignored.

56.     Gestamp intentionally subjected Holladay to adverse terms and conditions of employment because of her age to set up Holladay for failure and termination. Gestamp did not treat younger employees, such as Tarwater, Poche and Cornell, to the same terms, conditions and pay as it did Holladay.

57.     Gestamp terminated Holladay for errors caused by Cornell, a younger male employee, and then replaced Holladay with Cornell.

58.     Holladay's age was a but-for factor relied upon by Gestamp when it terminated her.

59.     As a proximate result of Gestamp's intentional actions, Holladay

suffered pay inequities, wage loss, benefit loss, interest, and loss of other employment benefits.

WHEREFORE Holladay seeks declaratory and injunctive relief, liquidated damages, award of lost employment benefits, back pay, reinstatement (or front pay in lieu thereof), pre- and post-judgment interest, costs, attorneys' fees, expenses, and any other relief available at law or at equity.

**COUNT TWO**
**TITLE VII SEX DISCRIMINATION**
**DISPARATE TREATMENT AND TERMINATION**

60.     Holladay is a woman and a member of a protected class.

61.     Holladay was employed by Gestamp as a Materials Analyst.

62.     Gestamp is an employer subject to Title VII and employs more than fifteen (15) employees.

63.     Holladay was paid less than similarly situated male comparators, such as Materials Analysts Poche and Cornell.

64.     Gestamp and Plant Manager Craig Lane favored men in hiring and promotion decisions. Lane hired, among others, male employees Poche, Cornell, Cance, and Steinwachs. Lane promoted male employees over females and paid males higher wages.

65.     Gestamp failed to follow its own policies and failed to implement a performance improvement plan or progressive discipline for Holladay to address her

alleged performance deficiencies. Males were not disciplined or terminated for similar infractions as Holladay.

66.     Holladay complained of gender discrimination in August 2020 to her supervisor and to Human Resources. Holladay's complaints were ignored.

67.     On September 2, 2020, Gestamp suffered a stock shortage due to a male employee's handling of the Martinrea account. Holladay was blamed and terminated, without notice or severance. Cornell, the male employee, was not disciplined.

68.     Male employees that were terminated were given a severance package, favorable recommendation, and were not opposed in their efforts to apply for unemployment benefits.

69.     After Holladay's termination, Lane promoted Poche (a male in his thirties) to Assistant Materials Manager, and promoted Cornell to Holladay's position.

70.     Holladay was qualified for the Assistant Materials Manager position but was denied the opportunity and pay because of her gender, female.

71.     Gestamp intentionally subjected Holladay to adverse terms and conditions of employment because of her gender. Holladay was set up for failure, blamed for problems and errors that were not properly attributable to her, and assigned job duties outside the scope of her job description to set her up for failure

and termination. Lane, Cance, and Gestamp did not treat male employees in this same manner. Poche and Cornell were not treated as Holladay.

72.     Gestamp, Lane, and Cance terminated Holladay from her employment at Gestamp because of her gender.

73.     Gestamp replaced Holladay with a younger, male employee, Cornell.

74.     Gestamp denied Holladay severance pay.

75.     Gestamp falsely represented to the Department of Labor that Holladay had been terminated for "misconduct" that was previously documented and rendered her ineligible for unemployment.

76.     Male employees were not similarly treated as Holladay.

77.     As a proximate result of Gestamp's intentional actions, Holladay suffered severe emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, shame, financial duress, wage and benefit loss, and financial loss.

WHEREFORE Holladay seeks declaratory and injunctive relief, nominal, compensatory, and punitive damages, award of lost employment benefits, back pay, reinstatement (or front pay in lieu thereof), pre- and post-judgment interest, costs, attorneys' fees, expenses and any other relief available at law or at equity.

## COUNT THREE
## RETALIATION UNDER ADEA AND AADEA

78.     Holladay is over the age of fifty (50) and was employed with Gestamp

as a Materials Analyst.

79.    Gestamp is an employer with over twenty (20) employees.

80.    Holladay complained of age discrimination on two occasions in August 2020.

81.    Holladay complained to Human Resources and then to Cance, her direct supervisor, about Gestamp's discrimination in its inequality of pay and that she was treated differently than younger employees.

82.    Within days of complaining to Green and Cance, Cance made age biased comments to Holladay about how long she had been working for Gestamp, and assigned her duties which were not in her job description, which she had not previously performed and were not assigned to other younger Materials Analysts.

83.    Within days of Holladay's complaints of discrimination, Gestamp employed a staffing agency and began hiring contract Materials Analysts to replace Holladay. Cance required Holladay to train the new hires to replace her in her position and with her accounts.

84.    Gestamp required Holladay to turn her BOCAR and Martinrea supplier accounts over to Cornell, a male new hire in his thirties. Cornell refused to accept any training from Holladay based on Cance's directives.

85.    On September 2, 2020, Gestamp ran out of Martinrea parts, requiring Cance to travel to the Martinrea facility overnight to pick up more parts. The supply

failure was caused by Cornell, but Cance blamed Holladay was blamed and used the shortage to terminate Holladay.

86.    Gestamp's termination of Holladay was in retaliation for her complaints of discrimination.

87.    Gestamp further retaliated by falsely representing to the Department of Labor that Holladay was terminated for "misconduct" and disqualifying her from receiving unemployment benefits.

88.    Gestamp continued to retaliate by disparaging Holladay to suppliers and employees after her termination and blaming her for ongoing issues with the SAP software and inventory issues with suppliers.

89.    As a proximate result of Gestamp's intentional acts of retaliation, Holladay suffered severe emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, shame, financial loss and duress, wage and benefit loss, and loss of other employment benefits.

WHEREFORE    Holladay    seeks    declaratory    and    injunctive    relief, compensatory damages, award of lost employment benefits, back pay, liquidated damages, reinstatement (or front pay in lieu thereof), pre- and post-judgment interest, costs, attorneys' fees, expenses, and any other relief available at law or at equity.

## COUNT FOUR
## RETALIATION UNDER TITLE VII

90.    Holladay is over the age of fifty (50) and was employed with Gestamp as a Materials Analyst.

91.    Gestamp is an employer with over twenty (20) employees.

92.    Holladay complained of gender discrimination on two occasions in August 2020.

93.    Holladay complained Human Resources and then to Cance, her direct supervisor, about Gestamp's discrimination in its inequality of pay and that she was treated differently than male employees because of her age.

94.    Within days of complaining of gender discrimination to Green and Cance, Cance assigned Holladay duties which were not in her job description, which she had not previously performed.

95.    Within days of Holladay's complaints of gender discrimination, Gestamp employed a staffing agency and began hiring contract Materials Analysts to replace Holladay. Cance required Holladay to train the new hires to replace her in her position and with her accounts.

96.    Gestamp required Holladay to turn her BOCAR and Martinrea supplier accounts over to Cornell, a male new hire in his thirties. Cornell refused to accept any training from Holladay based on Cance's directives.

97.   On September 2, 2020, Gestamp ran out of Martinrea parts, requiring Cance to travel to the Martinrea facility overnight to pick up more parts. The supply failure was caused by Cornell, but Cance blamed Holladay and used the shortage to terminate Holladay.

98.   Gestamp's termination of Holladay was in retaliation for her complaints of discrimination.

99.   Gestamp further retaliated for Holladay's complaints of gender discrimination by falsely representing to the Department of Labor that Holladay was terminated for "misconduct" and disqualifying her from receiving unemployment benefits.

100.  Gestamp continued to retaliate by disparaging Holladay to suppliers and employees after her termination and blaming her for ongoing issues with the SAP software and inventory issues with suppliers.

101.  As a proximate result of Gestamp's intentional actions, Holladay suffered severe emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, shame, financial loss and duress, wage and benefit loss, and loss of other employment benefits.

WHEREFORE Holladay seeks declaratory and injunctive relief, nominal, compensatory, and punitive damages, award of lost employment benefits, back pay, reinstatement (or front pay in lieu thereof), pre- and post-judgment interest, costs,

attorneys' fees, expenses, and any other relief available at law or at equity.

## COUNT FIVE
## VIOLATION OF THE EQUAL PAY ACT

102.   Plaintiff Holladay, a female, was, at all times relevant to this Complaint, an "employee" of Defendant Gestamp as that term is defined under the Fair Labor Standards Act, 29 U.S.C. §203(e)(1).

103.   Plaintiff Holladay was engaged in interstate commerce in connection with her employment with Defendant Gestamp.

104.   Defendant Gestamp is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203(d).

105.   Defendant Gestamp operates a facility in McCalla, Alabama.  It also operates a sister-plant in Lapeer, Michigan.

106.  Defendant Gestamp is engaged in the design, development, and manufacture of metal automotive components for its primary customer, Mercedes-Benz.

107.   Mercedes-Benz incorporates the components produced by Gestamp into their automobiles.

108.   Mercedes-Benz automobiles utilizing components produced by Gestamp are sold throughout the United States.

109.   Defendant Gestamp relies upon external suppliers for parts and components used in its manufacture of automotive components for its customer,

Mercedes-Benz.

110.   The external suppliers relied upon by Defendant Gestamp to provide parts and components include BOCAR US, Inc., located in Huntsville, Alabama, and Martinrea Tuscaloosa, Inc., located in Tuscaloosa, Alabama.

111.   BOCAR US, Inc. is an automotive supplier in aluminum high-pressure die casting structural and powertrain parts used in the automotive production process. BOCAR US, Inc., is part of the BOCAR Group, an international organization.

112.   Defendant Gestamp engages in interstate commerce in connection with the manufacture of metal automotive components, through, without limitation, the use of the interstate highway system for the shipment of parts and components from its suppliers and the delivery of completed product to its customer, Mercedes-Benz. Defendant Gestamp also ships goods, by air and ground vehicle, from is facility in Lapeer, Michigan, to Tuscaloosa, Alabama.

113.   Beginning in March of 2015, Defendant Gestamp employed Plaintiff Holladay as a Materials Planner/Analyst.

114.   Plaintiff Holladay's duties as a Materials Planner/Analyst included managing a portion of the parts inventory, visiting the production floor, and inputting data into Gestamp's resource planning software.

115.   As of August 1, 2020, Defendant Gestamp paid Plaintiff Holladay a

salary of $55,000 per year.

116.   On August 14, 2020, Defendant Gestamp notified Plaintiff Holladay that she would receive an annual merit-based pay increase, raising her salary to $56,500 per year.

117.   In August, 2020, Damian Poche was a 42 year old male Material Planner/Analyst.  He performed the same duties as Holladay, including managing a portion of the parts inventory, visiting the production floor, and inputting data into Gestamp's resource planning software.

118.   Defendant Gestamp paid Damian Poche a salary in excess of $60,000 per year.

119.   Dustin Cornell, an adult male, began working for Gestamp as a contractor in July or August, 2020.  He performed certain duties associated with the position of Material Planner/Analyst, including managing the Martinrea and BOCAR accounts.

120.   The Martinrea account was entirely under Mr. Cornell's control on September 2, 2020.

121.   Dustin Cornell was hired at a Materials Planner/Analyst to replace Plaintiff Holladay.

122.   Plaintiff Holladay had substantially more experience, training, education, and ability at performing the job of Materials Planner/Analyst than Mr.

Cornell did when he was hired by Gestamp.

123.   Defendant Gestamp paid Cornell a higher salary as a beginning Materials Planner/Analyst than it paid to Plaintiff Holladay.

124.   For the purposed of the Equal Pay Act, jobs held by the employee of opposite sexes need not be identical; they need only be substantially equal. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992). The controlling factor under the Equal Pay Act is job content – the actual duties the employees are required to perform. *Pearce v. Wichita County, City of Witchita Falls, Tex., Hospital Bd.*, 590 F.2d 128, 133 (5th Cir. 1979).

125.   While Holladay, Cornell and Poche may have been responsible for managing different parts or components, their jobs required: the same level of physical or mental exertion; the same knowledge of Gestamp's resource planning software; the same level of experience, training, education, and ability; and the same degree of accountability. See Material Planner Duties and Responsibilities (Attached as **Exhibit C**.)

126.   A plaintiff may establish an Equal Pay Act violation by comparing her wages to that of an employee of the opposite sex who either preceded or succeeded her; and when the higher-paid comparator replaces the plaintiff (rather than preceding her), the Equal Pay Act violation obtains during the period when the plaintiff receives the lower wage, even though the comparator has not yet been hired.

20

*Arrington v. Cobb County*, 139 F.3d 865, 876 n. 22 (11th Cir. 1998); *Pearce v. Wichita County*, 590 F.2d 128, 133 (5th Cir. 1979); 29 C.F.R. § 1620.13(b)(4) and (5).

127.   Since at least January 1, 2019, Defendant Gestamp has willfully violated Sections 6(d)(1) and 15(a)(2) of the Fair Labor Standards Act, §§ 206(d)(1) and 215(a)(2), by paying wages to Plaintiff Holladay at rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions.

128.   As a result of the acts complained of above, Defendant Gestamp unlawfully has withheld and is continuing to withhold the payment of wages due to Plaintiff Holladay.

WHEREFORE Holladay seeks an award of appropriate back wages in an amount to be proved at trial, and an equal amount as liquidated damages; an injunction enjoining Defendant from further violations of the Equal Pay Act; attorneys' fees, expenses, and costs; and such other relief as the Court deems appropriate;

## COUNT SIX
## RETALIATION UNDER THE FAIR
## LABOR STANDARDS ACT

129.   Plaintiff Holladay, a female, was, at all times relevant to this Complaint,

an "employee" of Defendant Gestamp as that term is defined under the Fair Labor Standards Act, 29 U.S.C. §203(e)(1).

130.   Plaintiff Holladay was engaged in interstate commerce in connection with her employment with Defendant Gestamp.

131.   Defendant Gestamp is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203(d).

132.   Defendant Gestamp operates a facility in McCalla, Alabama.  It also operates a sister-plant in Lapeer, Michigan.

133.   Defendant Gestamp is engaged in the design, development, and manufacture of metal automotive components for its primary customer, Mercedes-Benz.

134.   Mercedes-Benz incorporates the components produced by Gestamp into their automobiles.

135.   Mercedes-Benz automobiles utilizing components produced by Gestamp are sold throughout the United States.

136.   Defendant Gestamp relies upon external suppliers for parts and components used in its manufacture of automotive components for its customer, Mercedes-Benz.

137.   The external suppliers relied upon by Defendant Gestamp to provide parts and components include BOCAR US, Inc., located in Huntsville, Alabama,

and Martinrea Tuscaloosa, Inc., located in Tuscaloosa, Alabama.

138.   BOCAR US, Inc. is an automotive supplier in aluminum high-pressure die casting structural and powertrain parts used in the automotive production process. BOCAR US, Inc., is part of the BOCAR Group, an international organization.

139.   Defendant Gestamp engages in interstate commerce in connection with the manufacture of metal automotive components, through, without limitation, the use of the interstate highway system for the shipment of parts and components from its suppliers and the delivery of completed product to its customer, Mercedes-Benz. Defendant Gestamp also ships goods, by air and ground vehicle, from is facility in Lapeer, Michigan, to Tuscaloosa, Alabama.

140.   Beginning in March of 2015, Defendant Gestamp employed Plaintiff Holladay as a Materials Planner/Analyst.

141.   As of August 1, 2020, Defendant Gestamp paid Plaintiff Holladay a salary of $55,000 per year.

142.   On August 14, 2020, Defendant Gestamp notified Plaintiff Holladay that she would receive an annual merit-based pay increase, raising her salary to $56,500 per year.

143.   Defendant Gestamp has a policy which discourages employees from discussing their wages. Nevertheless, Plaintiff Holladay realized, through comments

made by other analysts, that she was the lowest paid analyst.

144.   Holladay also learned that the new analysts Gestamp was seeking to hire (such as Mr. Connell) were being offered more in starting salary than she was being paid.

145.   On August 19, 2020, Plaintiff Holladay emailed Virgil Cance, her direct supervisor and the person who terminated her, acknowledging her raise but questioning why she was not being paid at the same rate as the other analysts.

146.   The Fair Labor Standards Act protects employees who have filed "any complaint."  29 U.S.C. § 215(a)(3).

147.   The phrase 'filed any complaint' contemplates some degree of formality such that the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011).

148.   After Plaintiff Holladay complained about her rate of pay, Mr. Cance began assigning additional duties to Holladay duties which had not previously b een part of the job description of a Material Planner/Analyst.

149.   Mr. Cance terminated Plaintiff Holladay's employment with Gestamp on September 3, 2020, approximately two weeks after she questioned her pay rate.

150.   While Mr. Cance told Plaintiff Holladay that she was being terminated

for "poor performance," her termination came two weeks after receiving a merit-based pay increase based upon her acceptable job performance.

151.   When asked to explain the substance of her allegedly poor performance, Mr. Cance identified alleged supplier complaints. Those complaints were unrelated to Holladay's job responsibilities. The complaints related to a supplier who was being managed by a contract analyst, not Holladay.

152.   Defendant Gestamp later falsely claimed to that Plaintiff Holladay had been terminated for misconduct, resulting in the denial of unemployment compensation benefits.

153.   Defendant Gestamp terminated Plaintiff Holladay because she raised questions about the rate at which she was being paid as compared to the other Material Planner/Analysts.

**WHEREFORE**, Plaintiff seeks the following relief: An award of back pay and an equal amount in liquidated damages; an order of reinstatement or front pay in lieu thereof; liquidated damages equal to the back pay award; compensatory damages in an amount to be determined by a jury; attorneys' fees, expenses and costs; such other legal or equitable relief as appropriate to effectuate the purposes of Section 215(a)(3).

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
(205) 879-0377
akhaynes@haynes-haynes.com

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL**

Gestamp Alabama, LLC
2 North Jackson Street, Suite 605
Montgomery, AL 36104

**PLAINTIFF'S ADDRESS IS:**

Gloria Holladay
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226