## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLORIA HOLLADAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-01712-AMM** |
| | ) | |
| **GESTAMP ALABAMA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

This matter is before the court on a motion for attorney's fees, costs, and expenses filed by plaintiff Gloria Holladay. Doc. 216. For the reasons explained below, the motion is **GRANTED IN PART**.

## I.    BACKGROUND

This matter arises from an employment dispute between plaintiff Gloria Holladay and defendant Gestamp Alabama, LLC. *See* Doc. 17. Gestamp "manufactures automotive parts and components at its production facilities in McCalla, Alabama." Doc. 100 ¶ 1; Doc. 110 at ¶ 1. Ms. Holladay began working for the Materials Department of Gestamp as a Materials Handler in 2003 and became a salaried Materials Analyst in 2015. *See* Doc. 100 ¶ 6; Doc. 107-1 ¶ 4; Doc. 110 ¶ 6. On September 3, 2020, Ms. Holladay was fired. Doc. 107-1 ¶ 66. She filed a charge of discrimination with the Equal Employment Opportunity Commission and was

issued a Notice of Right to sue. *See* Doc. 17-1; Doc. 17-2.

On September 26, 2022, Ms. Holladay filed an amended complaint and alleged that "Gestamp hired younger employees in their twenties and thirties as Materials Analysts, and paid these younger Materials Analysts more money than [Ms.] Holladay performing the same job duties." Doc. 17 ¶ 50. Additionally, Ms. Holladay alleged that "Gestamp intentionally subjected [Ms.] Holladay to adverse terms and conditions of employment because of her age to set up [Ms.] Holladay for failure and termination." *Id*. ¶ 56. Moreover, Ms. Holladay alleged that Gestamp's Plant Manager "promoted male employees over females and paid males higher wages." *Id*. ¶ 64. Ms. Holladay also alleged that Gestamp "terminat[ed] . . . [Ms.] Holladay . . . in retaliation for her complaints of discrimination." *Id*. ¶ 87. Ms. Holladay further alleged that "Gestamp . . . willfully violated [the Equal Pay Act] by paying wages to [Ms.] Holladay at rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions." *Id*. ¶ 128. Finally, Ms. Holladay alleged that "Gestamp . . . falsely claimed . . . that [Ms.] Holladay had been terminated for misconduct, resulting in the denial of unemployment compensation benefits." *Id*. ¶ 153.

Ms. Holladay pleaded six counts. *See id*. ¶¶ 46–154. Count One asserted age

2

discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-20 *et seq*. Doc. 17 ¶¶ 46–59. Count Two asserted sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Doc. 17 ¶¶ 60–78. Count Three asserted retaliation under the ADEA and AADEA. *Id*. ¶¶ 79–90. Count Four asserted retaliation under Title VII. *Id*. ¶¶ 91–102. Count Five asserted violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). Doc. 17 ¶¶ 103–29. Count Six asserted retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Doc. 17 ¶¶ 130–54.

During the course of litigation, Ms. Holladay filed several motions and requested several extensions, some of which were denied by this court. *See, e.g.*, Doc. 50 at 12 (denying motion to compel and finding that Ms. Holladay failed to "establish a *prima facie* case of abuse of Rule 33(d)"); Doc. 62 at 4 (denying motion to extend discovery deadlines and finding that "Ms. Holladay has not established the requisite good cause to modify the court's scheduling order a fourth time"). Eventually, the parties filed cross motions for summary judgment. Doc. 93; Doc. 101.

On March 20, 2024, this court denied Ms. Holladay's motion for partial

summary judgment and entered summary judgment in Gestamp's favor on five of Ms. Holladay's six counts. *See* Doc. 135. Litigation proceeded towards trial on the single count that remained—the EPA claim. *See* Doc. 135; Doc. 141. On October 9, 2024, Gestamp made a Rule 68 offer of judgment to Ms. Holladay for $102,699.50, which exceeded all damages that were alleged against Gestamp in Ms. Holladay's itemized damages statement. *See* Doc. 191; Doc. 205-1. Ms. Holladay rejected the offer of judgment. *See* Doc. 210. On the eve of trial, the parties filed a joint motion for a consent judgment wherein Gestamp agreed to pay Ms. Holladay $102,699.50. *See* Doc. 211. The court entered the proposed consent judgment. *See* Doc. 212. In the proposed consent judgment, the parties agreed to a process whereby Ms. Holladay could seek a fee award. *See* Doc. 211-1 at 1; Doc. 212 at 1–2.

This matter is now before the court on a motion for attorney's fees, costs, and expenses in which Ms. Holladay seeks $829,559.70 in attorney's fees, $19,481.55 in costs, and $9,891.52 in expenses. *See* Doc. 216-1. Gestamp filed a response. Doc. 223. Ms. Holladay filed a reply. Doc. 228. Gestamp then filed a sur-reply without leave of court.[1] Doc. 230. Ms. Holladay filed a motion to strike the sur-reply because it was filed without leave of court. Doc. 231. Gestamp followed with a motion for

---

[1] The court's initial order specifies that "[s]ur-replies are not permitted without leave of court." Doc. 6 at 9.

4

leave to file a sur-reply. Doc. 233. The court did not separately rely on the arguments made in Gestamp's sur-reply to render this decision. Accordingly, Ms. Holladay's motion to strike, Doc. 231, and Gestamp's motion for leave to file a sur-reply, Doc. 233, are **DENIED AS MOOT**.

The court has conducted a careful, itemized review of Ms. Holladay's fee petition and its supporting documents.

## II.    LEGAL STANDARD

The EPA is a subsection of the FLSA that prohibits employers from engaging in sex discrimination when paying wages to their employees. *See* 29 U.S.C. § 206(d). Employers who violate the EPA "shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C.  § 216(b). Additionally, "[t]he court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id*.

"A reasonable attorney's fee . . . is calculated 'by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1089 (11th Cir. 2022) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "The sum of this calculation is often called the lodestar." *Id*. (cleaned up). Nevertheless, determining "a reasonable fee [under

the FLSA] is left to the sound discretion of the trial judge . . . ." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985). The Eleventh Circuit "has indicated that, at least in the FLSA context, there are some cases where a reasonable fee award is zero." *Batista v. S. Fla. Woman's Health Assocs.*, 844 F. App'x 146, 152 (11th Cir. 2021).

## III.    ANALYSIS

### A. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id*. "[A] movant may meet his burden by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (cleaned up). But this requires more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.

Ms. Holladay requests the following hourly rates for her counsel: $575.00 for Alicia Haynes, $550.00 for Cynthia Wilkinson, $610.00 for Charles Guerrier, and

$510.00 for Kenneth Haynes. *See* Doc. 216-2. Ms. Holladay provided declarations from six attorneys in support of her requested rates. Doc. 216-23; Doc. 216-24; Doc. 215-25; Doc. 216-26; Doc. 216-27; Doc. 216-28. All six testified to the reasonableness of the requested rates. *See* Doc. 216-23; Doc. 216-24; Doc. 215-25; Doc. 216-26; Doc. 216-27; Doc. 216-28.

Heather Leonard, an employment and civil rights attorney and mediator who has practiced in Alabama since 1998, stated that her "current hourly rate for mediation services is $550" and that her last "fee award [in which Ms. Wilkinson was co-counsel was] based on a rate of $550 an hour." Doc. 216-23 ¶¶ 1–2, 4, 10.

Allen D. Arnold, a lawyer who has "engaged in civil litigation law practice since 2004" and focused his practice on "federal employment claims" declared that the hourly rates requested in this case "are reasonable and well within the range of appropriate hourly charges given [the] experience [of the attorneys]" and his belief that some of the attorneys involved are "the very best plaintiff's employment law trial attorneys in the State of Alabama, and some of the best trial attorneys in the country." Doc. 216-24 ¶¶ 10, 20. Additionally, Mr. Arnold declared that his "opinions are formed by examining other employment law verdicts in trial courts around the country" and his research of "supporting fee affidavits of plaintiff's and defendant's attorneys in other civil matters." *Id*. ¶ 20.

Candis A. McGowen, a law partner who has specialized in labor and employment law and civil rights since 1988, declared that she has "received awards for attorneys' fees in previous cases that have ranged from $250.00 to $550.00 per hour." Doc. 216-25 ¶¶ 3–4, 6. Additionally, Ms. McGowen declared that "[t]he current hourly rate for an attorney with 20-25 years of experience exceeds $500 per hour[,]" while "[t]he current hourly rate for an attorney with over 30 years of experience in the labor and employment field exceeds $550 an hour[,]" leading Ms. McGowen to conclude that "[t]he hourly rates requested by [the attorneys in this case] are commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in similar areas of litigation . . . ." *Id*. ¶¶ 10–11.

Additionally, Ms. Holladay identified a decision from the Northern District of Alabama in which the court held that rates within the range requested by Ms. Holladay are reasonable. *See Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1280, 1294–95 (N.D. Ala. 2014) (adopting the findings of the magistrate judge that an hourly rate ranging from $525 to $625 is reasonable in the light of the attorney's expertise and years of experience).

Finally, the attorneys of record in this case declared that they each have experience in the field of employment law for over thirty years. *See* Doc. 216-26 ¶¶

8

3, 5–9; Doc. 216-27 ¶¶ 3–4; Doc. 216-28 ¶¶ 3, 5.

Gestamp argues that the requested rates are unreasonable, alleging that "[Ms.] Holladay has produced insufficient evidence that [these rates] are in line with prevailing market rates[.]" Doc. 223 at 22. Gestamp points to Mr. Arnold's declaration in which he "alleges he has recently earned $325-$425 in similar cases," a rate significantly lower than the rates sought by Ms. Holladay. *See id*.; Doc. 216-1. Additionally, Gestamp identifies a decision from the Northern District of Alabama "finding that $375 per hour is consistent with the average hourly rate in Birmingham for . . . employment law cases." Doc. 223 at 22 (cleaned up). Finally, Gestamp argues that Ms. Holladay's purported rates are "disingenuous" considering her counsel's arguments in recent cases that a "reasonable [hourly] rate for labor and employment partners at Burr Forman with over fifteen years of experience" is $175. *Id*. at 22–23.

Ms. Holladay's requested rates are reasonable. Ms. Holladay provided six affidavits in which attorneys testified that the requested rates are reasonable. *See* Doc. 216-23; Doc. 216-24; Doc. 216-25; Doc. 216-26; Doc. 216-27; Doc. 216-28. Three of these attorneys have performed work in this case, so their declarations will be afforded less weight. *See* Doc. 216-26; Doc. 216-27; Doc. 216-28; *Norman*, 836 F.2d at 1299. Still, three uninterested attorneys testified to the reasonableness of the requested rates. Gestamp's argument that one affiant personally sought a lower rate

9

in another case does not disturb the court's reasonableness finding. Without more, the court cannot know if or why that attorney sought a lower rate in that case. Moreover, the decision cited by Gestamp in which $375 was determined a reasonable rate pertained to an attorney with less than ten years of experience, which is significantly lesser than the thirty or more years of experience that Ms. Holladay's counsel has. *See Harris v. Reneau, Inc.*, No. 2:20-CV-00849-MHH, 2021 WL 3270495, at *7 (N.D. Ala. July 30, 2021) (finding that $375 was a reasonable hourly rate for an attorney who had been in practice for only eight years). Finally, Ms. Holladay's counsel's unreasonable arguments in another case do not undermine the evidence of reasonableness in this case.

Ms. Holladay requests an hourly rate ranging from $100 to $145 for the paralegals and law clerks that contributed to this case. *See* Doc. 216-1 at 1. She identifies a decision from the Northern District of Alabama that found similar rates to be reasonable. *See, e.g.*, *Virciglio v. Work Train Staffing LLC*, No. 2:12-CV-03738-AKK, 2018 WL 11424658, at *3 (N.D. Ala. Aug. 14, 2018) (observing that "the top end hourly rate for skilled paralegal assistance in Birmingham was $150" and citing decisions finding reasonable awards of $125 and $145). Gestamp did not object to the law clerk and paralegal rates requested by Ms. Holladay. Accordingly, the court finds the requested rates reasonable.

10

### B. Reasonable Hours

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "[E]xcessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed" to encourage fee applicants to exercise billing judgment. *See id*. (cleaned up). "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Id*. at 1306. "[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Id*. "The court, either trial or appellate, is itself an expert on the question [of reasonable fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . . ." *Id*. at 1303 (cleaned up).

Ms. Holladay "seeks compensation for 2227.96 hours of work" on the EPA claim. Doc. 216 at 12. She excluded 171.99 hours, as a "billing judgment" and 195.60 hours as "time wholly devoted to unsuccessful claims." *Id*. at 7 (cleaned up). Ms. Holladay argues that this figure is reasonable because her attorneys "achieved an exceptional result on her behalf" because she "will receive as much or more than she could have received had she prevailed at trial, without having to confront the

risk of losing, or potential consequences of Gestamp's offer of judgment." *Id*. at 22. Ms. Holladay argues that "[r]esults such as this do not justify a reduction in the lodestar." *Id*.

Gestamp argues that this figure is unreasonable for several reasons. First, Gestamp argues that it fails to account for "[t]he limited extent of [Ms.] Holladay's success in relation to all claims pursued[,]" and that it seeks "excessive and unnecessary fees" for "time spent on drafting meritless motions," "time spent on the fee petition," and "time spent on [Ms.] Holladay's unsuccessful Motion for Partial Summary Judgment." Doc. 223 at 7–10. Next, Gestamp argues that "there is no reasonable basis [to include fees for] nine depositions (along with associated preparation) in relation to recovery for a single-plaintiff EPA wage claim— particularly after [Ms.] Holladay argued at the pre-trial stage of litigation that [two deponents] should be excluded as witnesses." *Id*. at 9. Additionally, Gestamp argues that Ms. Holladay included hours committed to clerical tasks, inappropriately included hours expended by attorneys who did not appear in this case, and engaged in impermissible block billing. *See id*. at 12–16. Finally, Gestamp argues that the 116 hours expended on composing this "unreasonable fee petition" should be excluded. *Id*. at 16 (cleaned up).

The court cannot find that the expenditure of 2227.96 hours on an EPA claim

12

is reasonable. At a forty-hour per week pace, that amount reflects more than fifty full weeks of a law partner's undivided attention. Further, the fees that result from that alleged expenditure of time, $829,559.70, exceed the negotiated recovery, $102,699.50, by an extreme multiple. The 367.59 hours that Ms. Holladay's counsel voluntarily redlined, *see* Doc. 216 at 7, do little to cure the problem. These factors and several others counsel in favor of a reduction:

### 1. Meritless Motions

Ms. Holladay includes fees for hours expended on several unsuccessful motions. First, the entries include hours for work expended on a motion to compel, Doc. 29, and a renewed motion to compel, Doc. 34, both of which were denied. *See* Doc. 216-5 at 18–19, 25, 30; Doc. 50. The motion lacked merit because the court found that Ms. Holladay's assertion that her counsel should not have to comb through documents to find relevant information was "insufficient to establish a *prima facie* case of abuse of Rule 33(d)." Doc. 50 at 12. The motion was also unnecessary because the court found that "Gestamp [had] already produced the information responsive to [Ms. Holladay's] request." *Id*. at 14.

Second, the entries include hours for work expended on a motion to extend the discovery deadline, after numerous successive extensions had been granted. *See* Doc. 216-5 at 46. The request was denied because the court found that "Ms. Holladay

has not established the requisite good cause to modify the court's scheduling order a fourth time." Doc. 62 at 4.

Third, the entries include hours for work expended issuing subpoenas that were quashed for lack of necessity and untimeliness. *See* Doc. 85; Doc. 216-5 at 50, 56–57. The court noted that "Ms. Holladay appears to have already received the information she seeks from [the entity]." Doc. 85 at 18. The court explained that "[s]he cannot request the same information . . . merely because she is displeased with the information Gestamp provided." *Id*. Moreover, the court found that "Ms. Holladay [had] not complied with the court's instructions" and should not be rewarded for her untimely subpoenas. *Id*. at 20.

Fourth, the entries include hours for work expended filing unsuccessful motions to exclude declarations for eight witnesses. *See* Doc. 216-5 at 78–80. These motions were also denied because "the court reject[ed] Ms. Holladay's objections" and found that she had "not met [the] standard for striking sham affidavits." Doc. 135 at 3–4.

The court does not exclude the hours expended on these motions merely because they were unsuccessful. It excludes these hours because, in the light of the reasons for their failure, the court cannot find time spent preparing them was reasonable.

14

### 2.  Clerical Tasks By Non-Attorney Staff

Ms. Holladay includes fees for hours expended by non-attorney law clerks and paralegals. *See* Doc. 216-1. Controlling precedent directs that "paralegal time is recoverable as part of a prevailing party's award for attorney's fees and expenses but only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (cleaned up); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (observing that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them").

Gestamp argues that "[a] review of the time entries reveals many are plainly clerical and secretarial and thus non-recoverable[.]" Doc. 223 at 14. Ms. Holladay argues that "[t]he time entries identified by [Gestamp] are not clerical tasks but relate to litigation work[.]" Doc. 228 at 34.

The entries include a number of obviously purely clerical tasks: "[i]ndexed, scanned and bound defendant's deposition exhibits 1-34[,]" "[p]rinted all documents referenced in the motions in limine and objections[,]" "[c]onverted documents received . . . into one PDF file," "[d]eveloped a comprehensive trial notebook which includes all exhibits for defendant and plaintiff for Holladay witnesses[,]" "[d]ownload marked exhibits with labels and reload in Trial Pad program." Doc.

216-5 at 24, 44, 118, 132. These are not tasks "traditionally done by an attorney." *Jean*, 863 F.2d at 778 (cleaned up). Their dollar value is not enhanced just because a paralegal or law clerk did them. Accordingly, Ms. Holladay's inclusion of these hours at a law clerk or paralegal rate is unreasonable.

### 3. Excessive Fees-On-Fees

Ms. Holladay includes 113.60 hours expended on drafting this fee petition. *See* Doc. 216-2 at 2. "[C]ourts . . . have allowed parties to recover the cost of establishing their right to, and the amount of attorney's fees—the right to fees-on-fees." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010). But "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Moreover, an award of fees should not result in a windfall to the attorney. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002).

Ms. Holladay argues that "[p]reparing a fee petition is not a simple clerical matter" and that the petition as well as the "numerous spreadsheets" accompanying it "require[] a substantial amount of attorney time." Doc. 216 at 12. Gestamp argues that "[r]esearch should not be required for the preparation of the fee petition[]" and that the "time entries should have already been prepared." Doc. 223 at 17.

The record indicates that Ms. Holladay's counsel expended time on some reasonable and necessary tasks including excising excessive hours, dividing the

entries into five phases to reflect the progression of litigation, soliciting affidavits, and drafting this fee petition. *See* Doc. 216-2; Doc. 216-5. But spending 113.60 hours on these tasks is unreasonable, especially considering that a majority of the exhibits accompanying Ms. Holladay's fee petition consist of time entries. *See* Doc. 216-1; Doc. 216-2; Doc. 216-3; Doc. 216-4; Doc. 216-5; Doc. 216-6; Doc. 216-7; Doc. 216-8; Doc. 216-9. Those materials should have been prepared during the course of litigation, not solely for this fee petition. Accordingly, Ms. Holladay's inclusion of all 113.60 hours is unreasonable.

### 4. Block Billing

Gestamp argues that Ms. Holladay's counsel engaged in impermissible block billing. *See* Doc. 223 at 15. "Block billing is defined as billing multiple unrelated tasks in one billing entry, such that it becomes difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Johnston v. Borders*, 36 F.4th 1254, 1279 n.46 (11th Cir. 2022) (cleaned up). District courts making reasonableness determinations regularly approve reductions in block-billed hours. *See, e.g., Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010); *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11–12 (S.D. Fla. July 1, 2008).

Gestamp identifies several entries in the record that list multiple tasks,

including for instance: (1) "Analyzed prior briefing on Motion to Compel and Mr. Frazier's meet-and-confer notes, continued drafting/revising Reply Brief, prepared exhibits and filed all with Court[,]" (2) "Reviewed the Court's Revised Scheduling Order, Doc. 144 and identified all documents for the attorneys trial notebook. Started work on exhibits for trial and those used by Plaintiff in depositions on pay and promotion. Identified witnesses used by Defendant at summary judgment that it relied on pay and promotion decisions and created a chart of key points for this testimony for each witness[,]" (3) "Revise several subpoenas with request for documents and several notices of depositions and the requests for production." Doc. 216-5 at 33, 38, 94; *see also* Doc. 223 at 15–16. Ms. Holladay argues that her counsel did not engage in block billing and that Gestamp's "objections are due to be overruled." Doc. 228 at 33.

Gestamp is correct that the entries listed above are emblematic of block billing. The lack of clarity in and indivisibility of these entries makes it "difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Johnston*, 36 F.4th at 1287 (cleaned up).

Each of the factors discussed above establishes that the hours purportedly expended by Ms. Holladay's counsel are unreasonably high and serves as an independent basis to apply a fee reduction. "[W]here a fee application is voluminous

18

and a district court finds that the number of hours claimed is unreasonably high, the court has two choices: (1) it may conduct an hour-by-hour analysis or (2) it may reduce the requested hours with an across-the-board cut." *Caplan*, 36 F.4th at 1094 (cleaned up).

Ms. Holladay's fee petition, which contains 1,816 combined entries, is voluminous. *See* Doc. 216-5. And the block billing problem makes it impracticable for the court to apply an hour-by-hour reduction or disaggregate reasonable entries from unreasonable entries. *See id*. Applying an across-the-board cut to the volume of hours would be likewise infeasible. Ms. Holladay's counsel includes 1,816 entries from four attorneys and twelve law clerks and/or paralegals, most of whom bill at different hourly rates. *See* Doc. 216-1. Apportioning reduced hours between sixteen individuals at eight different rates in a manner that appropriately represents the work reasonably expended by each individual is not achievable. Therefore, the court will turn to the limited nature of Ms. Holladay's success and apply a reduction accordingly.

### C. Limited Overall Success

Ms. Holladay argues that her overall success was "exceptional." Doc. 216 at 22. "[B]ecause [Ms. Holladay] prevailed on the merits of her EPA claim and achieved excellent results," she asserts that "her counsel is entitled to an award that

includes all time reasonably expended in pursuit of the ultimate result." *Id*.

Gestamp argues that Ms. Holladay's overall success is limited. *See* Doc. 223 at 6. Gestamp asserts that "[s]he did not prevail on her age discrimination in discipline claim, age discrimination in pay, age discrimination in termination, sex discrimination in discipline, sex discrimination in pay, sex discrimination in termination, retaliation under the ADEA and AADEA, retaliation under Title VII, or retaliation under the FLSA." *Id*. Gestamp argues that "[Ms.] Holladay may not recover on any fees or expenses expended on the unsuccessful claims . . . ." *Id*.

Under binding precedent, overall success may impact an award of fees. The court must consider the extent of "discrete and unsuccessful claims" brought by the fee applicant. *Norman*, 836 F.2d at 1302. "If the claims on which the plaintiff did not prevail and the claims on which he did prevail were distinctly different claims based on different facts and legal theories, the court cannot award any fee for services on the unsuccessful claims." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (cleaned up). "[I]f the unsuccessful and the successful claims involve a common core of facts or are based on related legal theories, the court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation." *Id*. (cleaned up).

"[R]eduction is appropriate if the relief, however significant, is limited in

comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. In

*Tic-X-Press, Inc. v. Omni Promotions Co.*, the plaintiff's fee agreement provided for

counsel to receive as a fee one-third of the total judgment. 815 F.2d 1407, 1423 (11th

Cir. 1987). The district court calculated the plaintiff's lodestar at $118,545, but

reduced it by half based on the limited success of the litigation and small damage

recovery. *See id*. On appeal, the Eleventh Circuit explained that "[w]hile . . . a small

damage award alone does not justify reducing a fee award[,]" "[i]t is well established

that the result obtained from a lawsuit—the degree of success—is a relevant

consideration in reducing or enhancing a [lodestar]." *Id*. at 1424. The Circuit held

that "[t]he district court did not abuse its discretion in applying a negative multiplier

. . . ." *Id*.

District courts regularly follow this rule. *See, e.g.*, *James v. Wash Depot*

*Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007) (finding "that the

lodestar should be reduced by 50%" based on "the Plaintiff's counsel's failure to

adequately segregate time spent on successful and unsuccessful claims, Plaintiff's

billing for clerical work at senior attorney and partner rates, and the limited success

achieved by the Plaintiff."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp.

2d 1162, 1168 (denying attorney's fees where counsel "leveraged a small sum as a

stepping-stone to a disproportionately large award of attorney's fees"); *Jimenez v.*

*Borman*, No. 16-24055-CIV, 2017 WL 5508382, at *2 (S.D. Fla. Nov. 15, 2017)

(finding "that a 75% reduction is warranted because the number of hours billed is

unreasonable and excessive").

Ms. Holladay prevailed on only one of her six claims. *See* Doc. 135; Doc. 212.

Some of the unsuccessful and successful claims involve a common core of facts—

whether Ms. Holladay was discriminated against based on age and/or gender. *See*

Doc. 17. Accordingly, the court must compare Ms. Holladay's overall relief with the

number of hours reasonably expended on the litigation. *See Popham*, 820 F.2d at

1578.

Ms. Holladay received a favorable judgment on her EPA claim—the consent

judgment provided recovery for every item of damages that she sought. *See* Doc.

205-1; Doc. 212. But this success was quite limited when compared to the overall

litigation: Ms. Holladay's motion for partial summary judgment was denied and

summary judgment was entered in Gestamp's favor on five of Ms. Holladay's six

counts. *See* Doc. 135.

Ms. Holladay asserts that "time devoted wholly to [Ms. Holladay's]

unsuccessful claims that were dismissed at summary judgment" has been excluded.

Doc. 216 at 12. But the record calls that assertion into question and suggests that

many of Ms. Holladay's counsel's entries encompass a great deal of work that was

22

done in furtherance of the unsuccessful claims, and in any event precludes the court from disaggregating the entries to estimate the time spent on the EPA claim. For example, 1,038 included entries are dated before this court's summary judgment order, (which disposed of all but the EPA claim), and these 1,038 entries do not distinguish between work done for the EPA claim and work done for the five unsuccessful claims. *See* Doc. 216-5 at 1–87. Additionally, multiple entries are dedicated to conducting eleven depositions, and those depositions were not taken solely in furtherance of the single EPA claim. *See id.* at 11–85. But Ms. Holladay's counsel fails to make the necessary distinctions. As such, it is impossible for the court to disaggregate the entries to isolate the work on the EPA claim.

And even if Ms. Holladay's success were not limited to one-sixth of the claims she asserted, an $829,559.70 fee is wholly unreasonable for a single EPA claim worth less (even on full recovery) than one-eighth of that sum. Accordingly, the court applies a negative multiplier (a fractional reduction) to the requested $829,559.70 to represent the limited success attained by Ms. Holladay and assess a reasonable fee.

Gestamp asserts that this fraction should be one-tenth, arguing that the six counts of violations asserted by Ms. Holladay contain ten subclaims. *See* Doc. 223 at 20. This court declines to dissect Ms. Holladay's claims to this level of granularity,

23

and instead recognizes that six claims were brought against Gestamp, where one attained success. *See* Doc. 17; Doc. 135; Doc. 212. The court thus applies a five-sixths reduction to account for (1) its comparison of Ms. Holladay's overall relief to the number of hours reasonably expended on the litigation of her EPA claim, and (2) the court's finding that the lodestar is due to be substantially reduced as a result of numerous unrecoverable categories. *See supra* at 11–24. This reduction brings the fee award down from the $829,559.70 requested to $138,259.95.

### D. Expenses and Costs

In addition to fees, Ms. Holladay argues that she is entitled to $9,891.52 in expenses and $19,481.55 in costs associated with the EPA claim upon which she prevailed. *See* Doc. 216-1. Gestamp argues that many of the expenses are not recoverable and that the costs are excessive. *See* Doc. 223 at 20–21.

Under the FLSA, the prevailing party is entitled not only to reasonable attorney's fees, but also to "costs of the action." 29 U.S.C. § 216(b). Under controlling precedent, these costs are limited to those enumerated by 28 U.S.C. § 1920, which include the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making

24

> copies of any materials where the copies are necessarily
> obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts,
> compensation of interpreters, and salaries, fees, expenses,
> and costs of special interpretation services under section
> 1828 of this title.

28 U.S.C. § 1920 (cleaned up); *see also Glenn v. Gen. Motors Corp.*, 841 F.2d 1567,

1575 (11th Cir. 1988) (noting that "nothing in the legislative history associated

with Section 216(b)'s passage suggests that Congress intended the term 'costs of the

action' to differ from those costs as now enumerated in 28 U.S.C.A. § 1920").

The Eleventh Circuit has held that "costs such as general copying,

computerized legal research, postage, courthouse parking fees and expert witness

fees . . . are clearly nonrecoverable" under Section 1920. *Duckworth*, 97 F.3d at

1399; *see also Gary Brown & Assocs. v. Ashdon, Inc.*, 268 F. App'x 837, 846 (11th

Cir. 2008) (holding that "mediation expenses, meals, courier/postage, Lexis-Nexis

research, air fare, and lodging are not included under § 1920").

All fifty entries in Ms. Holladay's itemized expense submission are not

permitted by Section 1920 or controlling precedent. *See* Doc. 216-22. One entry is

for mediation, nine entries are for meals, ten entries are for postage, and most other

entries are for online research and pacer charges. *See id*. Finally, two entries are for

general copies and prints. *See id*. Although printing and making copies is allowed

25

by Section 1920, it must be "necessarily obtained for use in the case." 28 U.S.C. §§ 1920(2), (4). Ms. Holladay's generic entries do not make clear that such necessity existed. *See* Doc. 216-22. Accordingly, this court declines to award the requested $9,891.52 in expenses.

Next, Ms. Holladay submitted a bill of costs totaling $19,481.55. *See* Doc. 215. This bill includes electronic transcripts totaling $15,521.29; twenty-five entries for trial subpoenas, witness fees, and mileage totaling $2,367.86; $402.00 for Fees of the Clerk; and $1,190.40 for photocopies of documents "necessarily obtained for use at trial." *Id*. Ms. Holladay detailed the necessity of these copies—for the court, for plaintiff's counsel, for use at the witness stand, for use with the court's electronic document presenter, and for the jury. *See id*. at 6–10.

Gestamp argues that Ms. Holladay's costs should be proportionally reduced to reflect her limited overall success. *See* Doc. 223 at 21. Ms. Holladay argues that a proportional reduction is unwarranted but withdraws from her bill the following costs: (1) Martinrea's subpoena expenses; (2) Bocar's subpoena expenses; (3) Jessica Tarwater's deposition, witness fee, and mileage; (4) Dave Murrell's witness fee and mileage; (5) Sonya Green's witness fee and mileage; and (6) Craig Lane's witness fee and mileage. *See* Doc. 229 at 5. These withdrawals total $837.54. *See* Doc. 215 at 3–5.

26

Ms. Holladay's costs are reasonable. The depositions, trial subpoenas, witness and mileage fees, clerk fees, as well as other miscellaneous fees laid out in the bill of costs reflect expenditures made at least in part in furtherance of her EPA claim and have been appropriately explained. Moreover, Ms. Holladay's willingness to withdraw some costs bolsters their reasonableness. Accordingly, the court awards the requested costs, subtracting the withdrawn amounts.

## IV.    CONCLUSION

For the reasons explained above, Ms. Holladay's motion for attorney's fees and costs, Doc. 216, is **GRANTED IN PART** such that Ms. Holladay is awarded $138,259.95 in fees and $18,644.01 in costs. The defendant, Gestamp, is **ORDERED** to pay Ms. Holladay $138,259.95 in fees and $18,644.01 in costs.

**DONE** and **ORDERED** this 28th day of August, 2025.



**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE